# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY DENISE PACKARD,<br><br>   Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>   Defendant. | Case No.  1:20-cv-00463-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL<br>SECURITY APPEAL<br><br>(ECF Nos. 16, 17, 20) |

## I.

## INTRODUCTION

Kimberly Denise Packard ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an application for supplemental security income on December 10, 2003 and was found to be not disabled in decision issued on March 21, 2006.  (AR 17, 76-84.)

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and the matter has been assigned to the undersigned for all purposes.  (See ECF Nos. 6, 10, 19.)

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on May 26, 2016. (AR 118.) Plaintiff's applications were initially denied on October 6, 2016, and denied upon reconsideration on March 10, 2017. (AR 148-152, 156-160.) Plaintiff requested and received a hearing before Administrative Law Judge Joyce Frost-Wolf ("the ALJ"). Plaintiff appeared for a hearing on February 8, 2019. (AR 36-73.) On June 5, 2019, the ALJ found that Plaintiff was not disabled. (AR 14-30.) The Appeals Council denied Plaintiff's request for review on February 19, 2020. (AR 1-3.)

On March 31, 2020, Plaintiff filed this action challenging the denial of benefits. (ECF No. 1.) Plaintiff filed her opening brief on February 23, 2021. (ECF No. 16.) On March 25, 2021, the Commissioner filed an opposition. (ECF No. 18.) Plaintiff filed a reply on April 9, 2021. (ECF No. 20.)

A. **Hearing Testimony**

Plaintiff testified at the February 8, 2019 hearing. (AR 48-60.) Prior to Plaintiff testifying at the hearing, the ALJ confirmed that she had received the letter addressing her right to representation and providing her with phone numbers of various groups that could assist her in obtaining representation. (AR 38.) The ALJ advised Plaintiff of her right to representation and Plaintiff stated she understood her rights and waived her right to representation. (AR 39-41.)

Plaintiff was born on October 19, 1969. (AR 49.) Plaintiff graduated from high school and attended three semesters of city college. (AR 49-50.) She lives in a second floor apartment and has to climb stairs to access it. (AR 49.) Plaintiff lives alone. (AR 49.)

Plaintiff's prior work experience was in-home supportive services. (AR 50.) She worked both part time and full time. (AR 50.) She would do cleaning, washing, and cooking. (AR 50.) She would lift about twenty to thirty pounds. (AR 50.) She also worked part time for about five to six months at the Cecil Hanks Center cooking and serving food. (AR 51.)

Plaintiff has had difficulty lifting her right arm for about two years. (AR 52.) She did not have any injury. (AR 52.) She was sent to therapy and was supposed to be referred to an orthopedist. (AR 52.) Plaintiff had an x-ray done the prior year. (AR 52.) Plaintiff will get a

pillow and lean against it to put pressure on it and she uses Bengay or a rub on it. (AR 54.) Plaintiff is left handed. (AR 54.) Plaintiff also has lower back pain that has radiated down to her right leg. (AR 54.) She was told that she was losing the nerve fibers in her right leg. (AR 54.)

On some days, Plaintiff is able to move around and once she gets started she can move around a little bit. (AR 55.) On other days, she is stuck, cannot move, and is stiff. (AR 55.) Plaintiff can do house cleaning, but has a rolling walker that she uses when she cooks. (AR 55.) She can do light house cleaning, such as cleaning the countertops and toilets, and washing dishes. (AR 55.) Plaintiff is most comfortable when she is lying down. (AR 55.) She spends the majority of her day lying down. (AR 55.)

Plaintiff takes Norco, Soma, and other medications that have given her relief from her back pain. (AR 56.) She does not have any side effects from her medication. (AR 55.) Plaintiff will also use Bengay for her leg and lower back pain on some days. (AR 56.) The ALJ noted that Plaintiff was adjusting her position during the hearing. (AR 56.) Plaintiff said that it was due to back pain. (AR 56.)

Plaintiff's doctor wanted her to do injections, but she switched doctors and he will not do injections. (AR 57.) He is giving her pills. (AR 57.) Plaintiff did not try to get injections. (AR 57.) The doctors have not mentioned surgery for her back. (AR 57.) Plaintiff has scoliosis and they said that 5, 6, and 7 have shifted. (AR 57.) Plaintiff's leg will go numb from her knee down to her foot. (AR 58.) Sometimes her leg will just jump. (AR 58.) Plaintiff has recently been using her walker for about a week because her knee popped when she was going up the stairs. (AR 58.) Plaintiff uses her walker for sitting because it is more comfortable than sitting in a low chair. (AR 58.) She has not had any falls related to her leg. (AR 58.) Every now and then, Plaintiff's right leg will drag. (AR 59.) She will be walking and the next thing she knows her foot will drag and she cannot pick it up. (AR 59.) This happens weekly and lasts a short period of time. (AR 59-60.) When her leg goes numb if she is sitting or standing, she will shake it or rub it and it will lift up. (AR 60.)

Lamika Williams, Plaintiff's niece, also testified at the hearing. (AR 62-65.) Ms. Williams has known Plaintiff for over fourteen years. (AR 63.) She sees Plaintiff on a regular

basis. (AR 63.) Over the last couple years, Plaintiff's condition has definitely declined. (AR 63.) Plaintiff was able to care for her mother, but she started getting worse. (AR 63.) It started with her lower back. (AR 63.) Plaintiff has suffered many injuries. (AR 63.) Plaintiff was shot and was brutally attacked and things have gotten worse as she has gotten older. (AR 63.) She lives upstairs and it is a lot of wear and tear. (AR 63.) Plaintiff is unable to do a lot of physical activities that she was once able to perform. (AR 63.) She is walking with an extreme limp every day. (AR 63, 64.) Ms. Williams has recommended that Plaintiff will probably need a cane to walk. (AR 64.) Plaintiff is due to have an MRI. (AR 63.) Ms. Williams believes that at this point in her life Plaintiff would not be able to hold down a steady job. (AR 63-64.)

Plaintiff's also suffering a little from depression due to the loss of her mother and not being able to support herself like she used to. (AR 64.) So she is battling depression and anxiety. (AR 64.) Plaintiff interacts regularly with her family. (AR 64.) Ms. Williams and Plaintiff's children go by and check on her on a regular basis. (AR 64.)

Cheryl Chandler, vocational expert ("VE"), also testified at the hearing. (AR 66-72.)

**B.** **ALJ Findings**

The ALJ made the following findings of fact and conclusions of law. The ALJ did not give res judicata effect to the prior decision finding evidence of increased severity of Plaintiff's physical and decreased severity of her mental impairments. (AR 18.)

- Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2019.

- Plaintiff has not engaged in substantial gainful activity since June 9, 2015, the alleged onset date.

- Plaintiff has the following severe impairments: obesity; degenerative joint disease in the bilateral knees; degenerative disc disease of the lumbar spine; tendinopathy in the right shoulder; diabetes mellitus, type II; and mild right carpal tunnel syndrome.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform light work except she is limited to

standing and/or walking 4 hours in an 8-hour day. Plaintiff should no more than occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. Plaintiff should no more than occasionally balance, stoop, kneel, crouch and crawl. She can no more than frequently reach, handle, finger and feel with the right upper extremity.

- Plaintiff is unable to perform any past relevant work.
- Plaintiff was born on October 19, 1969, and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
- Plaintiff has at least a high school education and is able to communicate in English.
- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not she has transferable job skills.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.
- Plaintiff has not been under a disability, as defined in the Social Security Act, from June 9, 2015, through the date of this decision.

(AR 20-30.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th

_____

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The

Cir. 2004).   The five steps in the sequential evaluation in assessing whether the claimant is

disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision

of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).

In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.

Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).   "Substantial evidence" means more than a

scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

(internal quotations and citations omitted).   "Substantial evidence is relevant evidence which,

considering the record as a whole, a reasonable person might accept as adequate to support a

conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting

---

regulations are generally the same for both types of benefits.  Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

6

1  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

2  this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

3  for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

4  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

5  upheld.").

6                                              IV.

7                           **DISCUSSION AND ANALYSIS**

8      Plaintiff contends that the ALJ erred by discounting the opinion of her treating Nurse

9  Practitioner ("NP") Ryan Burdick; in discounting the symptom testimony of Plaintiff and her lay

10 witness, Lamika Williams; and by rejecting the limitations opined by the reviewing physicians in

11 favor of her own lay opinion leaving the residual functional capacity ("RFC") unsupported by

12 substantial evidence.  Defendant counters that the ALJ properly considered Mr. Burdock's

13 opinion and provided germane reasons to discount the opinion; properly considered and provided

14 a germane reason to reject the opinion of Ms. Williams; provided legally sufficient reasons to

15 discount Plaintiff's subjective symptom testimony; and properly evaluated the medical opinion

16 evidence.

17     **A.    The ALJ Provided Germane Reasons to Discount Nurse Practitioner Ryan**
              **Burdick's Opinion**
18

19     Plaintiff contends that the ALJ erred by failing to offer acceptable reasons to reject the

20 opinion by NP Burdick who was her treating provider.  Plaintiff argues that the ALJ erred by

21 misreading the signature and failing to realize that the opinion was that of her treating provider

22 and did not consider his treatment notes.

23     Defendant counters that the ALJ properly gave NP Burdick's opinion little weight

24 because it was inconsistent with the treatment records from the clinic which were mostly NP

25 Burdick's findings, it was not supported by clinical or diagnostic findings, and was quite

26 barebones, and it was contradicted by the opinion of Dr. Wagner that Plaintiff was capable of

27 light work.

28     Medical sources are divided into two categories: acceptable medical sources and other

                                              7

medical sources. 20 C.F.R. § 416.902. Under the regulations, a medical opinion is a statement from an acceptable medical source that reflects judgment about the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1513(a)(2). For claims filed before March 27, 2017, only licensed physicians and other qualified specialists were "acceptable medical sources" under 20 C.F.R. § 416.927(a). See SSR 06-3p: Sources of Evidence; Disability Determinations by Other Agencies. Mental health counselors, licensed clinical social workers, and nurse practitioners were "other sources" under 20 C.F.R. § 404.1513(d). Id.

Pursuant to the regulations, medical opinions from "other medical sources," such as nurse practitioners must be considered. 20 C.F.R. § 404.1527(f). In considering the opinion from an "other medical source," the ALJ is to consider the length of the treatment relationship and the frequency of examination, nature and extent of the treatment relationship, supportability, consistency, and specialization of the source. 20 C.F.R. § 404.1527(c). However, "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case." 20 C.F.R. § 404.1527(f)(1).

To disregard evidence from other sources, the ALJ must provide reasons germane to each witness for doing so. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010). The germane reasons provided must be specific to each witness. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009). The parties agree that under the regulations in effect at the time the ALJ was required to provide germane reasons to reject the opinion of NP Burdick.

The ALJ considered that "[i]n June 2018, one of the claimant's primary care providers, Ryan Bowdoin NP, completed a 'Verification of Incapacity' form for the claimant to obtain general relief-or state benefits-on account of her inability to work." (AR 25, 446-447.) In the form, NP Burdick opined that "due to back pain the claimant could not perform prolonged standing or sitting, and because of shoulder pain she had range of motion limitations. (AR 25, 446.) The ALJ gave this statement little weight because it was quite barebones and was lacking in specificity on her limitations and the basis of the opinion. (AR 25.) The ALJ noted that there

were few objective findings from Plaintiff's appointments at the clinic and those that were documented reveal at most moderate abnormalities and not enough to support a blanket opinion that Plaintiff was unable to work. (AR 25.)

To the extent that NP Burdick opined that Plaintiff was unable to work, even a "treating physician's opinion is not" "necessarily conclusive as to either physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Opinions on some issues are not medical opinions, but are opinions on issues reserved for the Commissioner. 20 C.F.R. § 404.1527(a)(1). One such issue is that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). The ALJ does not give any special significance to opinions on issues that are reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(3). As the issue of whether Plaintiff is able to work is reserved for the Commissioner, the Court finds that the ALJ did not err in rejecting NP Burdick's opinion that Plaintiff was unable to work. (AR 25, 466.)

Plaintiff argues that the ALJ erred by not crediting the opinion to NP Burdick who was Plaintiff's treating provider. However, the ALJ did consider that the opinion was by a treating provider and the treatment records of the clinic which are the records of NP Burdick. (AR 25.) The ALJ considered that during the period at issue Plaintiff sought treatment relatively regularly at Family Medicine Health Center. (AR 25, 317-347, 455-501.) At these appointments, Plaintiff's primary complaints were of shoulder pain, back pain, and knee pain, and her treatment primarily consisted of refills of her pain medications. (AR 25.) She also saw her provider for management of her diabetes and hypertension. (AR 24, 462 (January 2019), 463 (February 2019), 466 (October 2018), 467 (March 2019), 468 (August 2018), 474 (September 2017), 479 (May 2017), 483 (March 2017); 322 (April 2016), 328 (October 2015)).

The ALJ found that the objective findings showed that her providers generally took few and limited notations of physical examinations, with a simple checkmark indicating "normal" or "abnormal" in each body system and few details beyond that. (AR 25, 323 (May 2016), 330 (August 2015), 473 (October 2017), 30 (March 2017)). The ALJ noted that occasionally more detailed findings were documented. (AR 25.) Such as, on several occasions it was documented that Plaintiff had right shoulder pain with palpitation and range of motion limitations, tenderness

in her left knee, and tenderness in her lower back with range of motion limitations. (AR 25, 462 (January 2019), 463 (February 2019), 479 (May 2017)). The ALJ noted that Plaintiff's medical providers documented that her diabetes was without complication. (AR 25, 468 (August 2018)). Plaintiff reported that her diabetes was stable with her current medications. (AR 25, 479 (May 2017)). The ALJ also considered that throughout much of the period at issue Plaintiff's weight ranged from 215 to 240 pounds, for a BMI of 39 to 43. (AR 25, 427, 466, 476, 470.) The Court finds that the ALJ properly considered the factors in addressing NP Burdick's opinion.

Plaintiff argues that the ALJ erred because he was required to weigh the functional limitations set forth in the opinion. However, the ALJ did consider that the opinion was lacking in specificity on her limitations. (AR 25.) NP Burdick opined that Plaintiff's chronic back pain causes issues with prolonged sitting and standing and shoulder rotation makes use of arm limited. (AR 446.) Plaintiff argues that these are specific limitations and the limitation to prolonged sitting and standing, and reduced shoulder limitation would preclude work activity. However, the ALJ properly found that NP Burdick's opinion lacks specificity as to the limitations themselves. "The lack of specificity as to functional limitations is a legitimate reason to discount a medical opinion." Gerde v. Berryhill, No. C14-5679-MAT, 2018 WL 2193194, at *3 (W.D. Wash. May 14, 2018).

Here, NP Burdick's opinion that Plaintiff has issues with prolonged sitting and standing, and limitations in shoulder rotation are not specific enough to assist the ALJ in determining Plaintiff's residual functional capacity. See James S. v. Saul, No. 6:19-CV-1004-SI, 2021 WL 1181169, at *9 (D. Or. Mar. 29, 2021) (finding need to take breaks "irregularly" is vague as to the frequency and duration of the breaks); Klein v. Astrue, No. 3:11-CV-05309-RBL, 2012 WL 1416263, at *4 (W.D. Wash. Feb. 14, 2012), report and recommendation adopted, No. 3:11-CV-05309-RBL, 2012 WL 1416262 (W.D. Wash. Apr. 24, 2012) (medical opinion can be rejected due to its lack of specificity). NP Burdick did not include any specific limitations and "prolonged" is too vague to determine the amount of time that Plaintiff is capable of sitting or standing. Similarly, although NP Burdick opined that shoulder rotation makes use of the arm limited (AR 446), there is no indication of as to what limitations would apply.

The Court finds that any error in naming the correct provider as the author of the opinion was harmless.  Burch, 400 F.3d at 679; Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).  Although the ALJ incorrectly identified the author of the opinion, she did note that it was authored by a treating provider at the clinic and considered the clinic's medical records.  (AR 25.)  Further, in considering the objective findings in the medical records from the clinic, the ALJ noted that there were few and limited notations of physical examinations with simply a check mark indicating "normal" or "abnormal" for each body system and few details beyond that.  (AR 25.)  The ALJ found that while there were some objective findings in the records of right shoulder pain with palpitation and range of motion limitations, tenderness in her left knee, and tenderness in her lower back with range of motion limitations, the records generally recorded at most moderate abnormalities that would not support the blanket opinion that Plaintiff is unable to work.  (AR 25.)

Plaintiff argues that there are medical findings in the record that would support NP Burdick's opinion that she was incapable of work, however, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."  Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997).  Review of the clinic's medical records demonstrates that despite occasional notations of objective findings of pain or tenderness or difficulty lifting her arm (AR 323, 326, 328, 330, 462, 463, 479, 482, 483), the records largely document only "normal" or "abnormal" for each body system or no abnormal findings.  (AR 322, 324, 325, 327, 329, 334, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 481.)  The ALJ could reasonably conclude that the records generally recorded at most moderate abnormalities that would not support the blanket opinion that Plaintiff is unable to work.  (AR 25.)

Plaintiff argues that the ALJ erred because the other medical evidence in the record supports that she is unable to work, however the ALJ considered and provided great weight to the contrary opinion of Dr. Wagner who is a licensed physician and board certified in internal medicine.  (AR 27.)  The ALJ found that Dr. Wagner performed a physical examination and his

opinion was consistent with his findings and the subsequent evidence in the medical record. (AR 26-27.) Dr. Wagner found that Plaintiff had the ability to stand and walk up to four hours; no limitations in sitting with normal breaks; did not use an assistive device; could lift and carry twenty pounds occasionally and ten pound frequently; could occasionally climb, kneel, crouch, and crawl; and could frequently handle, finger, and feel. (AR 389.)

The ALJ provided germane reasons to reject NP Burdick's June 2018 opinion.

### B. The ALJ Provided Clear and Convincing Reasons to Discount Plaintiff's Subjective Pain Testimony

Plaintiff contends that the ALJ improperly rejected her symptom testimony by failing to provide specific clear and convincing reasons. Plaintiff argues that the ALJ cannot reject her symptom testimony because it is not supported by the objective medical evidence and that the ALJ found that her statements were contradicted by her daily activities because she lives alone and therefore must be able to attend to her daily activities.

Defendant counters that the ALJ properly found that 1) the objective medical evidence did not support Plaintiff's symptom allegations; 2) the extreme allegations were inconsistent with the course of treatment and Plaintiff's improvement and stability on medication; and her inconsistent statement to the consultative examiner that she was able to live alone, cook, clean, shop, perform her activities of daily living, and do some walking, light gardening, and stair climbing to get into her apartment.

Plaintiff replies that the ALJ failed to specifically identify the testimony that was not credible and explain what undermines the testimony.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina, 674 F.3d at 1112. The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal

punctuation and citations omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . .." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

The ALJ considered that Plaintiff alleged that she was disabled due to severe symptoms and limitations caused by her lumbar spine impairment, knee impairment, and shoulder impairment. (AR 24, 52, 54, 56.) She endorsed pain in her lower back that radiates with numbness and weakness in her right leg. (AR 24, 58.) Her right leg drags on a weekly basis. (AR 24, 58.) She experiences numbness from her knees into her feet. (AR 24, 58.) Some days she is very stiff and cannot move. (AR 24, 55.) On other days, Plaintiff is able to move around

and do activities such as cooking.  (AR 24, 55.)  She developed right arm pain two years ago. (AR 24, 52.)  For treatment, Plaintiff takes medication and applies topical treatment.  (AR 24, 54, 55.)  Plaintiff also uses a rolling walker.  (AR 24, 55, 58.)  She has no side effects from her medication and they provide relief from her back pain.  (AR 24, 55-56.)

The ALJ also considered that Plaintiff testified that she can do light household chores, such as dishwashing and wiping down the counters, and some cooking while she sits in her seated walker.  (AR 24, 55.)  Plaintiff is most comfortable during the day when she is lying down and spends most of her day lying down.  (AR 24, 55.)

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of the symptoms was not entirely consistent with the medical evidence and the other evidence in the medical record for the reasons discussed in the opinion. (AR 24.)

The ALJ also noted that in September 2016, Plaintiff reported that she lived in her home and did her own cooking and cleaning.  (AR 26, 395.)  She went shopping, performed her own personal care activities without assistance, did some walking, light gardening and climbed stairs to get into her house.  (AR 26, 395.)

The ALJ noted that although Plaintiff stated that she spent most of her day lying down and uses a rolling walker, there was no evidence that she appeared at her medical appointments with a walker or any ambulatory device.  (AR 27.)  Further, Plaintiff lives alone and thus must be able to independently perform her activities of daily living, do her household chores, and go grocery shopping.  (AR 27.)  Dr. Wagner documented that Plaintiff was a very pleasant woman with fairly robust daily activities.  (AR 27, 395, 396.)

Plaintiff argues that the ALJ improperly assumed that Plaintiff was able to independently perform her activities of daily living and do household chores because she lived alone.  But the ALJ considered that Dr. Wagner documented that Plaintiff reported that she lives alone and does her own cooking and cleaning.  (AR 26, 395.)  She reported that she does not drive, but shops and performs her activities of daily living without assistance.  (AR 395.)  Plaintiff does some

walking, climbs stairs at home and some light gardening.  (AR 26, 395.)

Further, Plaintiff reported at her pain management appointments that she was able to perform her activities of daily living and is able to clean her home and cook.  (AR 407, 412, 416, 422, 426.)

The ALJ could reasonably find that Plaintiff's reported activities demonstrated that she was able to live alone, could independently perform her activities of daily living, do her household chores, and go grocery shopping which demonstrated greater functionality that she testified to at the February 8, 2019 hearing.

The ALJ also found that the objective evidence in the medical record did not support Plaintiff's testimony regarding the severity of her symptoms.  Plaintiff does not contest the ALJ's finding that the objective evidence in the medical record does not support the limitations opined, but argues that the ALJ cannot rely on the lack of objective evidence to discount her symptom limitations.

The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony.  Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999).  The ALJ properly considered this evidence in weighing Plaintiff's credibility.  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ considered that although Plaintiff alleged she is unable to work due to a knee impairment, a February 13, 2019 x-ray of her left knee only showed mild medial compartment degenerative changes and early degenerative changes in the patellofemoral compartment.  (AR 24, 500.)  A September 2015, x-ray of her right knee showed marked degenerative changes with marked narrowing of the medial compartment and her left knee showed the same findings.  (AR 24, 344, 346.)  An MRI of Plaintiff's right should on December 12, 2017 showed mild to moderate tendinopathy of the supraspinatus tendon.  (AR 24, 501.)  Plaintiff had a nerve

conduction study on July 2016 that returned normal results.  (AR 25, 429-431.)

As discussed above, the ALJ also considered that Plaintiff was regularly treated at the Family Medicine Health Clinic and complained of shoulder pain, back pain and knee pain, but treatment primarily consisted of refills of her pain medication.  (AR 25.)  She was also treated for management of her diabetes and hypertension.  (AR 25.)  The providers took few to limited notations on physical examination with a simple checkmark indicating normal or abnormal in each body system and few details beyond.  (AR 25.)  There were occasionally more detailed findings documenting right shoulder pain with palpation and range of motion limitations, tenderness in her left knee, and tenderness in her lower back with range of motion limitations.  (AR 25.)

Plaintiff saw Dr. Edwards for pain management starting on September 5, 2017, and complained of lower back pain, right leg pain with tingling and diminished sensation, and occasional episodes of her right leg giving way.  (AR 25 452-453.)  Plaintiff was found to have diffuse tenderness over her lumbosacral area with range of motion limitations, but had negative straight leg raise bilaterally and no atrophy of the lower extremities.  (AR 25, 452.)  She had diminished sensation over her right thigh and part of her calf muscle but 4/5 strength in her extremities.  (AR 25-26, 452-453.)  Reflexes were 1+ in the knees and ankles.  (AR 26, 453.)  Plaintiff walked with a normal gait and was able to toe raises without difficulty.  (AR 26, 453.)  Dr. Edwards prescribed Gabapentin and Norco on a limited basis.  (AR 26, 453.)

Plaintiff continued to see Dr. Edwards through August 2018, complaining of lower back pain, knee pain, and shoulder pain.  (AR 26, 448, 449, 450, 451, 488.)  Dr. Edwards continued prescribing medication and encouraged Plaintiff to stay active at home.  (AR 26, 448, 449, 451.)  She reported that her medication reduced her pain level to a 3 out of 10.  (AR 26, 450.)

In 2016, Plaintiff was seen at Lags Spine and Sportscare complaining of bilateral knee pain, and lower back and leg pain.  (AR 26, 354, 359, 364, 369, 374, 381, 385, 387, 405, 410, 416, 421, 426.)  Physical examinations documented range of motion limitations in her lumbar spine with tenderness, a negative straight leg raise in the sitting and supine positions, negative slump test, but a positive Patrick test and reverse Thomas test bilaterally.  (AR 26, 356-357, 366,

371-372, 376-377, 383, 388-389, 407-408, 412, 417, 423.)  Her sensations and reflexes were intact throughout with 5/5 strength throughout and Plaintiff walked with a normal gait.  (AR 26, 356, 366, 371, 383, 389, 407-408, 412-413, 417-418, 423-424.)

The ALJ also considered that Dr. Wagner conducted an internal medicine consultative examination and complained of lower back pain that radiated to her right thigh, bilateral knee pain, and numbness to her fingers.  (AR 26, 394-395.)  However, Plaintiff was able to make a fist and only had slightly reduced grip on the right and reported rarely dropping things.  (AR 26, 395.)  She described that she lived on her own and did her own cooking and cleaning, went shopping, performed her personal care without assistance, did some walking and light gardening, and climbed stairs.  (AR 26, 395.)

Dr. Wagner noted that Plaintiff was easily able to get up from a chair in the waiting room and walk at a moderate speed back to the examination room without an ambulatory device, although she had a limp on the right side.  (AR 26, 395.)  Plaintiff sat comfortably, was able to get on and off the examination table, and could bend at the waist to take off her shoes and socks and put them back on.  (AR 26, 395-396.)  Dr. Wagner noted that Plaintiff had good dexterity.  (AR 26, 396.)  She could oppose her fingers and pick up a paperclip.  (AR 26, 396.)  Plaintiff could take several steps on her toes and heels although some right knee pain was noted.  (AR 26, 396.)  Plaintiff had negative Romberg sign and normal station.  (AR 26, 396.)  Her gait was normal except for the limp on the right side.  (AR 26, 396.)  She had a minimally positive straight leg raise on the right side.  (AR 26, 397.)  Plaintiff had some swelling of the knees and 1+ crepitus but without tenderness or laxity.  (AR 26, 397.)  Strength was 5/5 in the upper and lower extremities, but she did have reduced grip strength of 4+/5 in the right hand.  (AR 26, 397.)  Sensations and reflexes were intact throughout.  (AR 26, 397.)

The ALJ could reasonably find that the largely unremarkable findings in the medical record were inconsistent with Plaintiff's symptom testimony.  The ALJ's credibility finding is supported by substantial evidence in the record and viewed together provide clear and convincing reasons to support the credibility finding.

///

17

## C. The ALJ Provided a Germane Reason to Reject the Testimony of Lamika Williams

Plaintiff argues that the ALJ rejected lay witness testimony of Lamika Williams without comment. Defendant counters that the ALJ considered Ms. Williams testimony and because it mirrored that of Plaintiff and the ALJ properly rejected the testimony of Plaintiff any error was harmless. Plaintiff replies that Defendant did not identify a reason to reject Ms. Williams testimony because the ALJ did not provide one and this requires remand.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout, 454 F.3d at 1053; 20 C.F.R. § 404.1513(b)(4). The ALJ must give specific reasons germane to the witness in discounting the lay witness testimony. Stout, 454 F.3d at 1056. Where the ALJ gives reasons for rejecting the claimant's testimony that are equally relevant to similar testimony provided by lay witnesses, that would support a finding that the lay witness testimony is similarly not credible. Molina, 674 F.3d at 1114. However, if the ALJ ignores lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Cindy F. v. Berryhill, 367 F.Supp.3d 1195, 1216 (D. Or. 2019) (quoting Stout, 454 F.3d at 1056).

Although Plaintiff argues that the ALJ failed to provide any reason to reject the testimony of Ms. Williams, the ALJ did specifically address the opinion and provided a germane reason. (AR 21.) The ALJ considered that "claimant's niece" testified that she believed Plaintiff was suffering from depression and anxiety due to the death of her mother and inability to support herself. (AR 21, 64.) However, Ms. Williams also testified that Plaintiff interacts with her family members on a regular basis. (21, 64.) Further, the ALJ considered that Plaintiff had made no allegations of depression nor had she alleged depression in her disability paperwork. (AR 21.) The ALJ also considered that while there are a few occasions in the medical record in which Plaintiff was found to have moderate depression (AR 21, 426 (August 2016), 410 (November 2016); 387 (April 2016), at subsequent appointments and the consultative

examination Plaintiff did not complain of depression (AR 21, 394-395, 406, 412, 423, 440, 441, 442, 443,444, 445, 448, 449, 450, 451, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 481, 482, 483.)  An ALJ may reject lay witness testimony that conflicts with the medical evidence.  Lewis, 236 F.3d at 511; Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

The ALJ also considered Ms. Williams testimony that over the past few years Plaintiff's condition has declined, her pain has increased, and she has difficulty going up the stairs, and walks with a limp that has gotten worse, and she believes that Plaintiff requires a cane.  (AR 25, 63-64.)  However, Ms. Williams did not set forth any specific limitations and the ALJ incorporated the increased pain, difficulty climbing stairs, and difficulty walking into the residual functional capacity.  The ALJ found that Plaintiff was limited to walking only four hours in an eight hour day and could only occasionally climb stairs.  (AR 23.)

To the extent that Ms. Williams believed that Plaintiff needed a cane to walk, the ALJ addressed that Plaintiff used a walker to sit down when she was cooking but there was no evidence that she appeared with a walker or assistive device in the medical record which demonstrated generally normal station and gait.  (AR 27.)  Further, Ms. Williams' testimony that Plaintiff was unable to work due to her limitations is similar to Plaintiff's testimony that was rejected by the ALJ.  "[W]here the ALJ rejects a witness's testimony without providing germane reasons, but has already provided germane reasons for rejecting similar testimony, we cannot reverse the agency merely because the ALJ did not "clearly link his determination to those reasons."  Molina, 674 F.3d at 1121.  Where the reasons provided for rejecting the claimant's statements "apply with equal force to the lay testimony" any error would be harmless.  Sievers v. Berryhill, 734 F. App'x 467, 471 (9th Cir. 2018); Watkins v. Comm'r of Soc. Sec. Admin., 611 F. App'x 903, 904 (9th Cir. 2015).[3]  Here, since the ALJ rejected the similar testimony of Plaintiff, any error was harmless.  The ALJ's decision will not be reversed for errors that are harmless.  Burch, 400 F.3d at 679.

---

[3] Citation to these unpublished Ninth Circuit opinions is appropriate pursuant to Ninth Circuit Rule 36-3(b).

The Court finds no reversible error in the ALJ's consideration of Ms. Williams' testimony.

### D. Whether the Mental Residual Capacity Findings are Supported by Substantial Evidence in the Record

Plaintiff contends that the ALJ erred by rejecting the limitations opined by the reviewing physicians in favor of her own lay opinion and without proper evaluation of the records leaving the RFC unsupported by substantial evidence in the record. Plaintiff argues that the ALJ rejected Drs. Covey and Collado's opinions regarding Plaintiff's moderate limitations in her ability to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychological based symptoms. Plaintiff states that the finding that the medical opinions are not supported by sufficient evidentiary findings or are contrary to the conclusions mandated by the objective findings does not met the level of specificity required. Plaintiff points to records in which Plaintiff was found to be depressed and the testimony of her lay witness to support her argument that the residual functional capacity assessment is not supported by the record.

Defendant counters that the ALJ properly evaluated the opinions of Drs. Collado and Covey and properly found they were inconsistent with the record after the prior decision. Defendant argues that the ALJ found that the agency physicians had relied heavily on the prior decision in which her depression had been found to be severe, but that the record after the decision showed routine mental health screenings from her providers and she did not allege depression at other appointments.

Plaintiff replies that her assertions denying depression and failing to allege depression during her physical consultative examination are not a legitimate reason to reject Drs. Collado and Covey's opinions. Plaintiff contends that the broader record shows that Plaintiff's symptoms persisted and her lack of treatment was not due to lack of symptoms.[4]

---

[4] Although Plaintiff states that the ALJ erred in rejecting the opinions of Drs. Collado and Covey, Plaintiff has not addressed the legal standard to reject a physician opinion and the argument presented is that the RFC is not supported by substantial evidence in the record. Nor has Plaintiff challenged the ALJ's finding that her depression is non-severe. Accordingly, the Court finds that Plaintiff has waived the non-severe finding and the issue of whether the reasons provided to reject the opinion meet the standard to reject a physician opinion. Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014).

A claimant's RFC is "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). The RFC is "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)." Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014). At step four the RFC is used to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work. Garrison, 759 F.3d at 1011. "In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956.

The parties agree that the ALJ can meet his burden to show that the physician opinion is unsupported by the medical record "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 751 (quoting Cotton v. Bowen , 779 F.2d 1403, 1408 (9th Cir. 1989)).

As discussed above, in addressing whether Plaintiff's depression was a severe mental impairment, the ALJ considered Ms. Williams's testimony that she believes Plaintiff is suffering from depression and anxiety due to the death of her mother and inability to support herself. (AR 21.) In reviewing the medical record, the ALJ found only one instance in which depression was raised. (AR 21.)

The ALJ considered the records from Lags Spine and Sportscare where Plaintiff received her pain management. On April 2, 2016, plaintiff presented for a new patient examination and complained of pain in her lower back and bilateral knees. (AR 387.) She was screened for depression and the interpretation is moderately severe depression. (AR 387.) Plaintiff denied having a depressed mood. (AR 388.) There was no aberrant behavior noted. (AR 390.)

On August 3, 2016, Plaintiff was seen complaining of bilateral knee, leg and lower back pain. (AR 426.) She was screened and found to have moderate depression, however, the record also states that the depression screening on August 3, 2016 was negative. (AR 426, 427.) Plaintiff denied having a depressed mood. (AR 427.) The record notes that no aberrant behavior

was noted.  (AR 428.)

On November 2, 2016, Plaintiff was seen for her right knee, bilateral leg and lower back pain.  (AR 410.)  She was screened for depression and was found to have moderately severe depression.  (AR 410.)  Plaintiff denied having a depressed mood.  (AR 412.)  The record notes that she was a pleasant woman of 47 years old being seen for back pain and knee pain.  (AR 413.)  However, the ALJ found that there were no allegations or reports of depression or other mental symptoms at later appointments.  (AR 21.)

Review of the records from LAGS supports the ALJ's findings.  Plaintiff was seen on May 3, 2016, and denied having a depressed mood.  (AR 383.)  She was noted to have a positive depression screening and a depressed, irritable mood.  (AR 385.)  Plaintiff reported that she had been depressed for one day in the previous 2 weeks.  (AR 385.)  Plaintiff was oriented, with normal speech quality, but quantity was depressed.  (AR 385.)  She was to follow up with a social worker for counseling.  (AR 385.)  However, there is no evidence in the record that Plaintiff received counseling.

However, on June 3, 2016; June 17, 2016; July 1, 2016; August 24, 2016; October 3, 2016; December 5, 2016; Plaintiff denied having a depressed mood or memory loss and there are no findings that would indicate depression.  (AR 356, 366, 370, 375, 383, 406, 417.)  The ALJ noted that Plaintiff had not received any medications for depression or any other mental condition.  (AR 21.)

The ALJ gave little weight to the opinions of Drs. Collado and Covey who opined that Plaintiff's depression was severe with moderate limitations in concentration, persistence and pace, but mild limitations in social functioning.  (AR 27.)  The ALJ found that they relied heavily on the past ALJ decision in which Plaintiff had been found to have severe depression. (AR 27, 101, 126.)  The agency physicians did note that Plaintiff had not alleged depression in her current application, but that she had been found to have moderate depression in screening tests.  (AR 27.)  However, the ALJ found that in subsequent examinations Plaintiff denied having a depressed mood.  (AR 27, 356, 366, 370, 375, 383, 406, 417.)  Plaintiff did not endorse depression at the consultative examination and Dr. Wagner noted that she was a very pleasant

woman with fairly robust daily activities. (AR 27.) The ALJ found that there was little evidence to support depression as an ongoing severe impairment. (AR 27.)

Plaintiff argues that the ALJ erred by because there is evidence of depression in the record and the ALJ's selective focusing on Plaintiff's denials that she was depressed during physical examination is not sufficient to reject the limitations opined by the agency physicians. However, the agency physicians applied <u>Chavez</u> to find that Plaintiff's depression was severe, and the ALJ found that <u>Chavez</u> did not apply because there had been changed circumstances and there was new and material evidence relating to the determination of disability which included the decreased severity of her mental impairment. (AR 17-18.) The ALJ could reasonably conclude that the subsequent medical record demonstrated an improvement in Plaintiff's mental impairment.

First, as the ALJ noted, Plaintiff did not alleged depression in her current application. (AR 27, 90.) Second, the ALJ noted only a single medical record in which Plaintiff complained of depression (AR 385 (May 3, 2016)) and as discussed above on subsequent visits Plaintiff denied have a depressed mood or any memory issues. Third, as the ALJ noted and discussed below, there is very little evidence to support depression as an ongoing severe impairment. (AR 27.)

Plaintiff argues that the ALJ selectively focused on the facts that Plaintiff denied depression and the broader record shows that Plaintiff's symptoms persisted. Plaintiff points to four records of medical visits to support her argument. The first is the August 3, 2016 visit. Although the record shows a depression screening finding moderate depression and that Plaintiff reported feeling down or depressed nearly every single day (AR 359), this same visit notes that Plaintiff denied having depression and that the depression screening findings were negative on this date (AR 360.)

The second is a note on May 3, 2016, which documents a depressed and irritable mood, intense affect, and psychomotor retardation. (AR 359.) Plaintiff reported that she had been depressed for one day in the past two weeks. (AR 359.) Plaintiff was to follow up with a social worker for counseling. (AR 359.)

The third is a depression screening on April 2, 2016, in which Plaintiff was found to have moderately severe depression. (AR 387.) However, again this same record indicates that Plaintiff denied having a depressed mood. (AR 388.)

The fourth is a November 2, 2016 depression screening in which Plaintiff was found to have moderately severe depression. (AR 410.) But again the record indicates that Plaintiff denied depression at this same visit. (AR 412.)

Plaintiff also argues that the testimony of her lay witness, Ms. Williams supports continuing symptoms of depression. Specifically, Ms. Williams testified that Plaintiff was "suffering a little from depression due to the loss of her mom and not being able to really support herself like she used to be in the past. So, she's been, you know, back and forth battling with depression and anxiety." (AR 65.) The testimony that Plaintiff was "suffering a little from depression" is not inconsistent with the ALJ's finding that Plaintiff only had mild symptoms and does not support any moderate limitations in concentration, persistence and pace or in Plaintiff's ability to complete a normal workday and workweek without interruptions from psychological based symptoms.

Review of the record as a whole supports the ALJ's finding that Plaintiff's depression had improved. Other than a check box noting an abnormal finding of acute distress which do not include any abnormal mental findings (AR 323, 440, 441, 462, 463, 464, 466, 467, 471, 472, 473, 476, 477), there are no medical visits in which any provider documented depression or abnormal mental health findings or diagnosed depression (AR 322, 324, 325, 326, 327, 328, 330, 334, 396, 442, 443, 444, 448, 449, 450, 451, 452, 465, 468, 469, 470, 474, 475, 478, 479, 481, 482).

Substantial evidence supports the ALJ's finding that Plaintiff did not have more than mild mental limitations and the Court finds that the RFC is supported by substantial evidence.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in evaluating the opinion of NP Burdick, the symptom testimony of Plaintiff and her lay witness, and the mental RFC is

supported by substantial evidence.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Kimberly Denise Packard. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  **May 19, 2021**

UNITED STATES MAGISTRATE JUDGE